No. 25-1050

In the

# United States Court of Appeals for the Fourth Circuit

————————

MOBILIZATION FUNDING, LLC,

*Plaintiff,*

v.

BARBARA STOKES; SCOTT STOKES; GSH OF ALABAMA, LLC,

*Defendants–Appellants,*

and

JESSUP CONSTRUCTION, LLC; ANTHONY SETLIFF;
KIMBERLY SETLIFF,

*Defendants,*

v.

WESTERFIELD CONSTRUCTION BY GLICK, LLC,

*Third Party Defendant–Appellee.*

————————

On appeal of right under Fed. R. Civ. P. 54 from the United States
District Court for the District of South Carolina, No. 9:24-cv-03592

## OPENING BRIEF OF APPELLANTS

Joseph Paul Schilleci, Jr.
SCHILLECI & TORTORICI, P.C.
100 Centerview Drive, Ste. 205
Birmingham, AL 35216
(205) 978-4211
jps@schillecilaw.com

Robert F. Parsley
MILLER & MARTIN PLLC
832 Georgia Ave., Ste. 1200
Chattanooga, TN 37402
(423) 756-6600
bob.parsley@millermartin.com

*Counsel for Appellants Barbara Stokes, Scott Stokes,
and GSH of Alabama, LLC*

# DISCLOSURE STATEMENTS

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

### DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-1050     Caption: Mobilization Funding, LLC v. Barbara Stokes, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

GSH of Alabama, LLC
(name of party/amicus)

who is     Appellant    , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

### DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-1050      Caption: Mobilization Funding, LLC v. Barbara Stokes, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Barbara Stokes
(name of party/amicus)

who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?      ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐ YES ☑ NO
   If yes, identify all such owners:

iv

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?               ☐YES ☑NO
    If yes, identify entity and nature of interest:


5.  Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.  Does this case arise out of a bankruptcy proceeding?                 ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.


7.  Is this a criminal case in which there was an organizational victim?       ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. **25-1050**          Caption: Mobilization Funding, LLC v. Barbara Stokes, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Scott Stokes
(name of party/amicus)

who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?          ☐ YES ☑ NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?          ☐ YES ☑ NO
     If yes, identify all such owners:

vi

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature s/ Robert F. Parsley            Date: 4/9/2025

*Counsel for Appellants GSH of Alabama, LLC,*
*Barbara Stokes, and Scott Stokes*

# TABLE OF CONTENTS

Disclosure Statements ...............................................................................ii

Table of Authorities....................................................................................x

Jurisdictional Statement.............................................................................1

I. Basis for District Court's Subject-Matter Jurisdiction...............1

   A. There is complete diversity of citizenship. .............................1

   B. The amount in controversy exceeds $75,000 exclusive of
      interest and costs. ..................................................................4

II. Basis for Appellate Jurisdiction. ................................................4

Statement of the Issues...............................................................................5

Statement of the Case ................................................................................5

I. Statement of the Facts.................................................................5

   A. Mobilization Funding is a lender in the business of
      contract financing, and it had a hidden referral
      relationship with Westerfeld Construction. ...........................6

   B. Westerfeld Construction and Mobilization Funding
      together fraudulently induced GSH and the Stokes to
      guarantee a $5.8 million contract-financing loan from
      Mobilization Funding............................................................8

   C. Westerfeld Construction and Mobilization Funding
      conspired to divert project-related payments for their
      own benefit, without paying down the loan..........................15

II. Course of Proceedings and Disposition Below. ..........................19

III. Rulings for Review.....................................................................21

Summary of the Argument .....................................................................22

Argument..................................................................................................24

I. Standards of Appellate Review. ................................................24

II. The District Court Erred By Dismissing the Stokes and
     GSH's Third-party Claims Against Westerfeld Construction
     for Lack of Personal Jurisdiction...............................................26

A. Standards for establishing a prima facie case for specific personal jurisdiction..............................................................26

B. Westerfeld Construction purposefully availed itself of the privilege of doing business in South Carolina by conspiring and collaborating with Mobilization Funding. ...............................................................................28

   1. To determine whether there has been purposeful availment, the Court considers non-exclusive factors. ............................................................................29

   2. Westerfeld Construction purposefully availed itself of the privilege of doing business in South Carolina by conspiring with Mobilization Funding.......................30

   3. Westerfeld Construction purposefully availed itself of the privilege of doing business in South Carolina by inducing GSH and the Stokes to agree to South Carolina forum-selection provisions. ...............................40

   4. Westerfeld Construction is subject to specific personal jurisdiction in South Carolina because it substantially collaborated with Mobilization Funding.............................................................................44

C. The Stokes and GSH's third-party claims arise out of Westerfeld's activities directed at South Carolina...............45

D. It is constitutionally reasonable for the District of South Carolina to exercise personal jurisdiction over Westerfeld Constriction in this case......................................47

III. The Court Should Disregard or Strike the Affidavit Belatedly Filed by Westerfeld Construction. ...............................49

IV. Alternatively, the Court Should Vacate the Dismissal and Remand for Jurisdictional Discovery. ........................................51

Conclusion ..............................................................................................53

Request for Oral Argument....................................................................54

Certificate of Compliance.......................................................................56

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aetna Cas. & Sur. Co. v. Barboursville Am. Legion Post 177, Inc*.,
  966 F.2d 1441 (4th Cir. 1992) ................................................................ 2

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
  293 F.3d 707 (4th Cir. 2002) ................................................................ 35

*Barton v. Sindall Transp., Inc.*,
  934 F.2d 318 (4th Cir. 1991) ................................................................ 53

*Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*,
  212 F.3d 1031 (7th Cir. 2000) .............................................................. 36

*Bennett v. ACS Primary Care Physicians-Se. P.C.*,
  908 S.E.2d 110 (S.C. Ct. App. 2024) .................................................... 42

*BeoCare Grp., Inc. v. Morrissey*,
  124 F. Supp. 3d 696 (W.D.N.C. 2015) ............................................ 30, 31

*Berger v. N.C. State Conf. of the NAACP*,
  597 U.S. 179 (2022) .............................................................................. 48

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .............................................................................. 46

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
  334 F.3d 390 (4th Cir. 2003) ........................ 6, 24, 25, 37, 39, 50, 51, 52

*Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*,
  636 F.3d 101 (4th Cir. 2011) ................................................................. 4

*Cline v. Hanby,*
No. CIVA 2:05-0885, 2006 WL 3692647
(S.D.W. Va. Dec. 13, 2006) ............................................................ 31, 37

*Combs v. Bakker,*
886 F.2d 673 (4th Cir. 1989) ................................................................ 6

*Consulting Eng'rs Corp. v. Geometric Ltd.,*
561 F.3d 273 (4th Cir. 2009) ........................................ 26, 27, 41, 47, 48

*Coppola v. Karpathoes, Inc.,*
670 F. App'x 107 (4th Cir. 2016) ......................................................... 4

*Daimler AG v. Bauman,*
571 U.S. 117 (2014) ............................................................................ 27

*dmarcian, Inc. v. dmarcian Europe BV,*
60 F.4th 119 (4th Cir. 2023).................26, 28, 29, 33, 35, 36, 44, 45, 47

*Doe 9 v. Varsity Brands, LLC,*
679 F. Supp. 3d 464 (D.S.C. 2023) ...................................................... 32

*Doe v. Mast,*
Doe v. Mast, 741 F. Supp. 3d 409 (W.D. Va. 2024).............................. 31

*ESAB Grp., Inc. v. Zurich Ins. PLC,*
685 F.3d 376 (4th Cir. 2012) .............................................................. 27

*Fabian v. Lindsay,*
765 S.E.2d 132 (S.C. 2014)................................................................. 42

*Fed. Ins. Co. v. Lake Shore Inc.,*
886 F.2d 654 (4th Cir. 1989) .............................................................. 27

*FL Spring Hill Cortez LLC v. BC Waycross Spring Hill LLC,*
651 F. Supp. 3d 801 (D.S.C. 2023) ...................................................... 27

*Foster v. Arletty 3 Sarl,*
278 F.3d 409 (4th Cir. 2002) .............................................................. 27

*Fowler v. Lee*,
  18 F. App'x 164 (4th Cir. 2001) ............................................................ 52

*Grayson v. Anderson*,
  816 F.3d 262 (4th Cir. 2016) ......................................................... 24, 27

*Hammond v. Butler, Means, Evins & Brown*,
  388 S.E.2d 796 (S.C. 1990) ................................................................... 38

*Hardaway Concrete Co., Inc. v. Hall Contracting Corp.*,
  647 S.E.2d 488 (S.C. Ct. App. 2007) ................................................... 42

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*,
  935 F.3d 211 (4th Cir. 2019) ......................................................... 25, 39

*Higgins v. E.I. DuPont de Nemours & Co.*,
  863 F.2d 1162 (4th Cir. 1988) ............................................................... 1

*Hunt v. Nuth*,
  57 F.3d 1327 (4th Cir. 1995) ............................................................... 51

*In re Grand Jury 2021 Subpoenas*,
  87 F.4th 229 (4th Cir. 2023) ............................................................... 53

*Jennings v. Frostburg State Univ.*,
  679 F. Supp. 3d 240 (D. Md. 2023) ...................................................... 51

*Jiminez v. Mary Washington Coll.*,
  57 F.3d 369 (4th Cir. 1995) .................................................... 33, 51, 52

*Kingman v. Nationwide Mut. Ins. Co.*,
  134 S.E.2d 217 (S.C. 1964) ................................................................. 42

*Lolavar v. de Santibanes*,
  430 F.3d 221 (4th Cir. 2005) ............................................................... 31

*Martinez v. Duke Energy Corp.*,
  130 F. App'x 629 (4th Cir. 2005) ........................................................... 3

*McLaughlin v. McPhail*,
  707 F.2d 800 (4th Cir. 1983) ......................................................... 30, 31

*Md. Chapter of Am. Massage Therapy Ass'n, Inc. v. State of Md.*,
  928 F.2d 399 (4th Cir. 1991) ......................................................... 25, 26

*Mylan Labs., Inc. v. Akzo, N.V.*,
  2 F.3d 56 (4th Cir. 1993) ...................................................... 24, 38, 39

*Paradis v. Charleston Cnty. Sch. Dist.*,
  861 S.E.2d 774 (S.C. 2021) ................................................................. 32

*Paxton v. S. Pa. Bank*,
  93 F.R.D. 503 (D. Md. 1982) ................................................................ 3

*Perdue Foods LLC v. BRF S.A.*,
  814 F.3d 185 (4th Cir. 2016) ......................................................... 29, 30

*Porter v. Clarke*,
  852 F.3d 358 (4th Cir. 2017) ............................................................. 26

*Portrait Homes - S.C., LLC v. Pa. Nat'l Mut. Cas. Ins. Co.*,
  900 S.E.2d 245 (S.C. Ct. App. 2023) .................................................. 43

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
  131 F.4th 205 (4th Cir. 2025) .............................................................. 1

*Sadighi v. Daghighfekr*,
  36 F. Supp. 2d 267 (D.S.C. 1999) ...................................................... 36

*Springs Indus., Inc. v. Gasson*,
  923 F. Supp. 823 (D.S.C. 1996) ......................................................... 38

*Starr Consulting, Inc. v. Glob. Res. Corp.*,
  No. 1:06CV586, 2007 WL 9757852 (M.D.N.C. Feb. 21, 2007) ............. 30

*Sunny Days Ent., LLC v. Traxxas, L.P.*,
  376 F. Supp. 3d 654 (D.S.C. 2019) ..................................................... 41

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*,
   682 F.3d 292 (4th Cir. 2012) ................................................................ 44

*UMG Recordings, Inc. v. Kurbanov*,
   963 F.3d 344 (4th Cir. 2020) ........................................... 6, 25, 29, 45, 50

*United Capitol Ins. Co. v. Kapiloff*,
   155 F.3d 488 (4th Cir. 1998) .................................................................. 3

*United States v. Ancient Coin Collectors Guild*,
   899 F.3d 295 (4th Cir. 2018) .......................................................... 25, 53

*Universal Leather, LLC v. Koro AR, S.A.*,
   773 F.3d 553 (4th Cir. 2014) .............................................. 24, 27, 40, 44

*Unspam Techs., Inc. v. Chernuk*,
   716 F.3d 322 (4th Cir. 2013) .............................................. 30, 31, 40, 45

*Voliva v. Seafarers Pension Plan*,
   858 F.2d 195 (4th Cir. 1988) ................................................................ 52

*Wachovia Bank, N.A. v. Fed. Rsrv. Bank of Richmond*,
   338 F.3d 318 (4th Cir. 2003) ................................................................ 50

*Whitaker v. Monroe Staffing Servs., LLC*,
   42 F.4th 200 (4th Cir. 2022)................................................................. 36

*Wildcat Retro Brands LLC v. NWL Distrib. LLC*,
   No. 8:20-CV-04207-DCC, 2021 WL 2914990
   (D.S.C. July 12, 2021).......................................................................... 36

*Williams v. Martorello,*
   59 F.4th 68 (4th Cir. 2023)...................................................... 39, 51, 52

## Constitutions and Statutes

U.S. Const., amend. XIV ......................................................................... 27

28 U.S.C. § 1291 ....................................................................................... 4

28 U.S.C. § 1332 ............................................................. 1, 3, 19

28 U.S.C. § 1332(a) ................................................................. 4

28 U.S.C. § 1332(a)(1) .............................................................. 1

28 U.S.C. § 1367(a) ................................................................. 3

28 U.S.C. § 1367(b) ................................................................. 3

28 U.S.C. § 1441 .............................................................. 1, 19

28 U.S.C. § 1653 ..................................................................... 1

S.C. Code Ann. § 36-2-803 ...................................................... 27

S.C. Code Ann. § 36-2-803(A)(3) .............................................. 36

S.C. Code Ann. § 36-2-803(A)(1) .............................................. 33

S.C. Code Ann. § 36-2-803(A)(7) .............................................. 33

## Court Rules

Fed. R. App. P. 4(a)(1)(A) ........................................................ 4

Fed. R. App. P. 32(a)(7)(B)(i) ................................................... 56

Fed. R. Civ. P. 12(b)(2) .......................................................... 20

Fed. R. Civ. P. 12(b)(6) .......................................................... 25

Fed. R. Civ. P. 14(a) ............................................................... 2

Fed. R. Civ. P. 54(b) .......................................................... 4, 21

## Other Authorities

*Overt Act*, BLACK'S LAW DICTIONARY (12th ed. 2024) .............................. 34

6 FED. PRAC. & PROC. *Civ.* § 1444 (3d ed. June 2024)...............................2

Marc Guberti, *Contract Financing: Is It Right for Your Business?*,
    Banks.com (Sept. 25, 2024),
    https://www.banks.com/articles/loans/business-loans/contract-
    financing/ (last visited Apr. 8, 2025)......................................................6

## JURISDICTIONAL STATEMENT

## I.    Basis for District Court's Subject-Matter Jurisdiction.

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332. This action was originally filed in state court on April 23, 2024, and after service of process, it was timely removed, on June 20, 2024, to federal court under 28 U.S.C. § 1441. JA17–18.

### A.    *There is complete diversity of citizenship.*

There is complete diversity of citizenship. 28 U.S.C. § 1332(a)(1). "Diversity must be established at the time of removal." *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1988). Facts supporting subject-matter jurisdiction may be shown at any time. 28 U.S.C. § 1653; *see Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 220 n.6 (4th Cir. 2025).

At the time of removal, the citizenship of Plaintiff (Florida and South Carolina) differed from the citizenship of every Defendant (Alabama and Louisiana). Specifically, at the time of removal:

- Plaintiff Mobilization Funding II, LLC was a citizen of the States of Florida and South Carolina, where its members resided. JA568.

- Defendant Jessup Construction, LLC was a citizen of the State of Louisiana, where its members resided, JA569, and

1

> its members Defendants Anthony Setliff and Kimberly Setliff were citizens of Louisiana. JA23–24, JA425.

- Defendant GSH of Alabama, LLC was a citizen of the State of Alabama, where its members reside, JA569, and its members Defendants Barbara Stokes and Scott Stokes were citizens of Alabama, JA24, JA161.

When there is complete diversity between the original plaintiff and the original defendants, as in this case, diversity cannot be defeated when a defendant asserts related third-party claims, even if those third-party claims are brought against a party that has the same state of citizenship as the original plaintiff or the defendant/third-party plaintiff. "[T]here need be no independent jurisdictional basis for [a defendant's third-party] claim if diversity of citizenship exists between the original parties," as here. 6 FED. PRAC. & PROC. *Civ.* § 1444 (3d ed. June 2024); *see Aetna Cas. & Sur. Co. v. Barboursville Am. Legion Post 177, Inc*., 966 F.2d 1441, at *4 (4th Cir. 1992) (table) ("There is no doubt that if this was a properly filed third-party claim under Fed. R. Civ. P. 14(a), the district court could have exercised ancillary jurisdiction over it notwithstanding the non-diversity of its parties."). Supplemental "subject matter jurisdiction over a third-party claim, regardless of whether there is independent subject matter jurisdiction over such claim, exists if the Court has subject matter jurisdiction to hear the main claim out of which

2

the third-party claim arises." *Paxton v. S. Pa. Bank*, 93 F.R.D. 503, 505

(D. Md. 1982); *see* 28 U.S.C. § 1367(a)–(b).

Diversity can potentially be defeated if the original *plaintiff* asserts

a claim directly against a non-diverse third-party defendant:

> In any civil action of which the district courts have original
> jurisdiction founded solely on section 1332 of this title, the
> district courts shall not have supplemental jurisdiction under
> subsection (a) over claims by *plaintiffs* against persons made
> parties under Rule 14, 19, 20, or 24 of the Federal Rules of
> Civil Procedure …, when exercising supplemental jurisdiction
> over such claims would be inconsistent with the jurisdictional
> requirements of section 1332.

28 U.S.C. § 1367(b) (emphasis added); *see Martinez v. Duke Energy Corp.*,

130 F. App'x 629, 635 (4th Cir. 2005). But this prohibition does not control

here because it does not apply to third-party claims asserted by a

*defendant* in the original action, as here. "[T]he limitation of § 1367(b)

applies only to *plaintiffs*' efforts to join nondiverse parties." *United*

*Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 492 (4th Cir. 1998). Plaintiff

Mobilization Funding has asserted no claim against Third-party

Defendant Westerfeld Construction by Glick, LLC. *See* JA8–16.

In sum, Defendants Stokes and GSH's third-party claims against

Third-party Defendant Westerfeld Construction, JA175–216, which arise

from the same case and controversy as the original complaint, do not undermine the district court's subject-matter jurisdiction.

   *B.    The amount in controversy exceeds $75,000 exclusive of interest and costs.*

The amount in controversy, $7.4 million, JA29, JA33, exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a); *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).

## II.   Basis for Appellate Jurisdiction.

This Court has appellate jurisdiction under Federal Rule of Civil Procedure 54(b) and 28 U.S.C. § 1291. On November 13, 2024, the district court dismissed the third-party claims against Westerfeld Construction. JA522–533. On December 19, 2024, the district court certified its order of dismissal as a final judgment under Rule 54(b), there being no just reason for delay. Doc. 62. This triggered a right to immediate appeal. *See Coppola v. Karpathoes, Inc.*, 670 F. App'x 107, 108 (4th Cir. 2016). Third-party Plaintiffs the Stokes and GSH timely filed their notice of appeal within 30 days, on January 13, 2025. JA562–565; *see* Fed. R. App. P. 4(a)(1)(A).

4

## STATEMENT OF THE ISSUES

1. Whether the district court erred by dismissing the third-party claims against Westerfeld Construction for lack of personal jurisdiction over it in South Carolina, including by discounting allegations of its conspiracy with a South Carolina party.

2. Whether the district court should have stricken the supplemental affidavit belatedly filed by Westerfeld Construction with its reply supporting its motion to dismiss.

3. Whether the district court abused its discretion by not permitting jurisdictional discovery before dismissing the third-party claims against Westerfeld Construction for lack of personal jurisdiction.

## STATEMENT OF THE CASE

### I.    Statement of the Facts.

This appeal lies from an order dismissing the Stokes and GSH's third-party claims against Westerfeld Construction for lack of personal jurisdiction, which was entered without conducting an evidentiary hearing. JA522–533. Consequently, this Court must take the Third-party Plaintiffs' facts as true and interpret them "in the light most favorable to [Stokes and GSH], assume [their] credibility, and draw the most

5

favorable inferences for the existence of jurisdiction." *See UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

> A. *Mobilization Funding is a lender in the business of contract financing, and it had a hidden referral relationship with Westerfeld Construction.*

Plaintiff Mobilization Funding II, LLC is a South Carolina company that does business in South Carolina. JA23, JA176. Mobilization Funding is a lender in the business of contract financing. JA183–184.

"Contract financing" is a financial transaction in which a contractor—such as a building contractor—receives advance funding for an awarded but unperformed contract so that the contractor will have the resources it needs to begin or complete the contract. *See* Marc Guberti, *Contract Financing: Is It Right for Your Business?*, BANKS.COM (Sept. 25, 2024), https://www.banks.com/articles/loans/business-loans/contract-financing/ (last visited Apr. 8, 2025). "Most commercial contracts in the construction industry are paid for in milestones throughout the process or fully at the end of contract completion. In either case, business owners

6

will need to invest their own money to prepare and execute the specific project." *Id*.

Mobilization Funding uses an alternative business model that involves not just lending to contractors but also providing project-related accounting and funds-management services. JA183–184. Its business model generally works as follows.

First, Mobilization Funding typically takes the contractor's construction contract as collateral for a loan of up to 20% of the contract's value. JA184.

Second, for efficiency, and for the borrower's purported convenience, Mobilization Funding itself manages, along with its agents, the project-related funds and accounting for the borrowing contractor. Mobilization Funding places the loaned funds in an account that it or one of its agents controls. JA184. It also receives and manages the project owner's progress payments to the borrowing contractor. JA184. Mobilization Funding aligns the loan repayment schedule with the underlying payment timeline for the construction project. JA184. It represents that it pays down the loan by reimbursing itself from the contractor's progress payments. JA184. These financial, accounting, and

7

funds-management services are part of what the borrowing contractor is paying for when it pays fees for the loan. *See* JA184 (citing https://mobilizationfunding.com/loan-process-how-it-works/).

Third, Mobilization Funding operates a Referral Partner Program in which it "partners" with other companies, and pays them a "competitive commission," when they refer new borrowers to it. JA184 (citing https://mobilizationfunding.com/partner-with-mobilization-funding/). Mobilization Funding uses this program to entice new borrowers to take out contract-financed loans with it. JA185.

Unknown to the Stokes and GSH, Mobilization Funding maintained such a referral partnership with Westerfeld Construction. JA184, JA189, JA196, JA207. Through this partnership, both Mobilization Funding and Westerfeld Construction profited whenever Westerfeld Construction successfully induced a contractor to take out a contract-financed loan from Mobilization Funding. *See* JA184, JA189, JA207.

> **B.** *Westerfeld Construction and Mobilization Funding together fraudulently induced GSH and the Stokes to guarantee a $5.8 million contract-financing loan from Mobilization Funding.*

Westerfeld Construction is a general contractor located in Florida. JA177. In May 2020, Westerfeld Construction entered a $10 million

8

contract with the State of Florida to serve as general contractor for a project rebuilding residences that had been damaged or destroyed in 2017 by Hurricane Irma (the "Florida Rebuild Project"). JA177, JA181–183, JA186; *see generally* JA219–289.

Westerfeld Construction collaborated with Mobilization Funding as its referral partner. Together, they induced Jessup Construction, a Louisiana company, both to serve as a subcontractor for Westerfeld Construction on the Florida Rebuild Project and to enter into contract-financed loan transactions with Mobilization Funding. JA175–178, JA214. Westerfeld Construction and Mobilization Funding together also induced the Stokes and GSH to partner with Jessup Construction on the Florida Rebuild Project and to guarantee its contract-financed loan. JA175–178, JA191–192, JA214.

GSH is an Alabama company whose members are Barbara Stokes and Scott Stokes. JA174, JA176. GSH manufactures customizable, environmentally friendly, and energy-efficient modular homes and manufactured housing units that can be used for disaster relief. JA176. It also specializes in providing disaster-relief solutions, including to the Federal Emergency Management Agency and state governmental

9

agencies. JA176, JA183. GSH's proprietary, state-of-the-art engineering and manufacturing techniques have made it a recognized leader in disaster-relief solutions. JA176.

By the end of 2020, GSH was looking for a new lender for its FEMA-related contract financing. JA183. Among other issues, GSH had grown weary of the damaging accounting discrepancies committed by its prior lender. JA183. In January 2021, GSH's managing member, Ms. Stokes, was introduced to Scott Peper, Mobilization Funding's CEO. JA176–177, JA183. When Ms. Stokes explained that GSH wanted to do business with a lender that could also effectively manage the project-related accounting and funds, Mr. Peper touted Mobilization Funding's services. JA183. GSH soon obtained a six-month loan from Mobilization Funding for FEMA projects. JA185.

On February 10, 2021, via email, Mr. Peper introduced Ms. Stokes to Brandon Bey, Westerfeld Construction's Manager. JA177, JA188, JA245. Mr. Peper told Ms. Stokes that he (and Mobilization Funding) had worked with Mr. Bey (and Westerfeld Construction) on substantial Florida restoration projects. *See* JA188–189. Around the same time, to induce GSH to do business with Jessup Construction and Westerfeld

10

Construction on the Florida Rebuild Project, Mr. Peper made representations to Ms. Stokes intended to assure her about doing business with those companies. JA188–189. On behalf of Westerfeld Construction, Mr. Bey represented to Ms. Stokes that Jessup Construction and GSH could expect to obtain a $3 million subcontract on the Florida Rebuild Project. JA189, JA205, JA214.

Meanwhile, Jessup Construction proposed including GSH as a subcontractor for two restoration projects, including the Florida Rebuild Project. JA185–186. In February 2021, with GSH's authorization, Jessup began including GSH-supplied items in Jessup's bids for disaster-relief work for the State of Florida, including the Florida Rebuild Project. JA186.

Over the ensuing months, Mr. Peper and Mr. Bey, on behalf of Mobilization Funding and Westerfeld Construction, together made numerous false representations to Ms. Stokes. *See* JA203–205. These representations were intended to induce, and did induce, GSH to join Jessup Construction in obtaining a contract-financed loan from Mobilization Funding for the Florida Rebuild Project. *See* JA203–205.

These misrepresentations to Ms. Stokes on behalf of Mobilization

Funding and Westerfeld Construction included stating that:

1. The proposed contract-financing loans for the Florida Rebuild Project could be repaid within two weeks;

2. Mobilization Funding itself owned capital sufficient to fund the loans;

3. Mobilization Funding and Westerfeld Construction would cooperate to apply payments from the State of Florida toward the loan balance and distribute profits to Jessup Construction and GSH;

4. Mobilization Funding would use payments from the State of Florida to directly pay subcontractors of Jessup Construction and GSH;

5. Interest on any unpaid balance of the loan would be charged at the contractual rate; and

6. Westerfeld Construction would maintain proper accounting records.

JA204–205; *see* JA59, JA193.

Neither Mr. Peper nor Mr. Bey, however, disclosed to Ms. Stokes

the referral-partner relationship between Mobilization Funding and

Westerfeld Construction or the fact that Westerfeld Construction itself

stood to profit just by inducing GSH to take out a loan from Mobilization

Funding. JA189, JA196, JA207. Mr. Peper intended for Mobilization

Funding and Westerfeld Construction to profit from inducing GSH and

12

Jessup Construction to obtain contract financing from Mobilization Funding. JA189, JA201.

In August 2021, Westerfeld Construction hired Jessup Construction as a subcontractor for the Florida Rebuild Project. JA177–178, JA290–322. In turn, instead of merely hiring GSH as a sub-subcontractor, Jessup Construction entered into a joint-venture agreement with GSH for the Florida Rebuild Project. JA177–178, JA186–188, JA323–337. Jessup Construction and GSH agreed to share equally all their profits from the project. JA190–191, JA336 § 16.2.1.[1]

Westerfeld Construction's subcontract with Jessup Construction acknowledges GSH's partnership with Jessup Construction and its exclusive right to supply modular buildings for the project. JA293–294 § 3.5, JA310 § 3.5. Both Westerfeld Construction and Mobilization Funding were aware of GSH's joint venture with Jessup Construction. JA189–191, JA209. In fact, Mr. Peper communicated to Ms. Stokes his approval of this joint venture. JA192.

---

[1] The text of the record's joint venture agreement between GSH and Jessup, including a portion of § 16.2.1, is partially obscured. The provision detailing a 50-50 profit split, however, is clearly legible.

13

On December 12, 2021, Jessup Construction, GSH, and the Stokes entered into a contract-financing transaction with Mobilization Funding. Jessup Construction borrowed $5.8 million for the Florida Rebuild Project. JA25–27, JA178–179, JA192–194; *see generally* JA339–420 (loan documents); JA34–131 (same). Progress payments due to Jessup Construction under its subcontract with Westerfeld Construction served as part of the collateral. JA27, JA37, JA59–60, JA66, JA180, JA193, JA372; JA316 § 10.1.3. Because GSH was a 50/50 partner with Jessup Construction on the Florida Rebuild Project, GSH and the Stokes (along with Jessup Construction's owners, the Setliffs) executed guaranties for the loan. JA25–26, JA178, JA193; JA67–141 (guaranties); JA373–414 (same). The loan's terms set the interest rate and a loan maturity date of August 1, 2022. JA59, JA363.

Under the loan, Jessup Construction maintained a joint project account with Mobilization Funding, which enabled Mobilization Funding to manage funds. JA59. In connection with the loan, Jessup Construction, Mobilization Funding, GSH, and Westerfeld Construction also entered into an electronic-fund-transfer agreement. JA195–196, JA204, JA419–

14

420. This agreement acknowledged the joint account and included Westerfeld Construction in the payment-approval process. JA419.

The loan documents and guaranties expressly choose to be governed by and interpreted under South Carolina law. JA25, JA46 § 8(d), JA56 § 11, JA63 § 15(c), JA77 § 6.08(a), JA116 § 6.08(a), JA129 § 6.08(a). These contracts also broadly select South Carolina as the forum for any litigation relating to or arising from the loan documents and guaranties, JA24–25, JA46 § 8(e), JA56 § 11, JA64 § 15(d), JA78 § 6.08(b), JA116 § 6.08(b), JA129 § 6.08(b).

*C.   Westerfeld Construction and Mobilization Funding conspired to divert project-related payments for their own benefit, without paying down the loan.*

Westerfeld Construction and Mobilization Funding colluded to induce Jessup Construction to take out its loan and to induce GSH and the Stokes to guarantee it. Although the promissory note and a funds-control agreement describe the loan-pay-down obligation as discretionary or optional, JA59, JA416, Mobilization Funding persuaded GSH and the Stokes to guarantee the loan by representing that progress payments would be used to make the required monthly note repayments, JA54, JA59, and to pay project invoices and expenses, while profits would be distributed to Westerfeld Construction, Jessup Construction, and

15

GSH, JA193; *see* JA302–303 § 10.1.1–10.1.9.2, JA419. On numerous

occasions, Mobilization Funding

> represented to Jessup [Construction] and GSH that it would
> apply a portion of the payments received into the account from
> the Florida Rebuild Project against the [Mobilization Fund-
> ing]/Jessup Loan Agreement and then distribute the remain-
> ing profit equally to [Westerfeld Construction], Jessup [Con-
> struction], and GSH in accordance with [the] Florida Rebuild
> Subcontract on a 50% completion and a 100% completion of
> work performed basis.

JA193; *accord* JA175. Mobilization Funding also induced GSH and the

Stokes to guarantee the loan by promising to provide accounting services

and to manage funds for the project. JA59, JA180, JA193, JA416, JA419.

The loan documents, project contracts, and funds-control

agreements gave Mobilization Funding and Westerfeld Construction

joint control over a project-specific bank account in the name of

Westerfeld Construction. JA416. Mobilization Funding and Westerfeld

Construction were contractually required to account for all

project-related funds and to disburse those funds solely for approved,

project-related purposes (such as paying project-related invoices and

expenses, paying down the loan, and disbursing profits). JA37–38, JA59,

JA180, JA193, JA195–198, JA220–221 § 1.E, JA231–232 § 1.K, JA416–

16

420; *see* JA26–27. Mobilization Funding and Westerfeld Construction ultimately controlled disposition of project-related funds. JA198, JA213.

From 2021 through 2023, Mobilization Funding and Westerfeld Construction—as well as Jessup Construction—kept GSH in the dark about project accounting. JA175–176, JA191, JA198, JA201, JA206, JA214. For example, without GSH's knowledge or consent, in August 2021 Mobilization Funding canceled GSH's six-month FEMA loan and rolled it into a loan to Jessup Construction. JA185, JA192. In 2022, without telling GSH or getting its consent, Mobilization Funding, Westerfeld Construction, and Jessup Construction extended the $5.8 million loan's maturity date by one year; they later extended it once again to February 1, 2024. *See* JA26–29, JA132–135, JA138, JA196, JA422. Also in 2022, Westerfeld Construction refused to allow Ms. Stokes to continue participating in weekly status meetings concerning the Florida Rebuild Project. JA195. GSH was repeatedly denied access to project-related accounting records, JA200. And in July 2023, Mobilization Funding and Jessup Construction unilaterally executed a new funds-control agreement, JA26–27, to which GSH later objected (to no avail), JA198.

17

Then, on February 2, 2024, Mobilization Funding's counsel sent GSH and the Stokes, in their capacity as guarantors, a notice of loan default, demanding payment of no less than $7.4 million for the Florida Rebuild Project loan. JA28–29, JA138–139, JA199, JA422–423. In connection with this notice, Mobilization Funding revealed for the first time that, despite having obtained control of over $6 million in progress payments from the State of Florida, not one dollar of it had been used to pay down the principal loan amount of $5.8 million. JA199–200. And to the extent Mobilization Funding paid itself interest, it apparently did so at rate far exceeding the contractual rate. JA200, JA207.

Moreover, after paying $3 million in project-related invoices and expenses, Mobilization Funding and Westerfeld Construction diverted the remaining $3 million for their own use and benefit. *See* JA175–176, JA195, JA200–201, JA214. Not only did GSH not receive any share of the profits from the Florida Rebuild Project, but it also was saddled with an outstanding, unpaid invoice for $400,000 in project-related expenses. JA201, JA208. A reasonable inference is that Mobilization Funding, which itself had had to borrow money to fund its loan to Jessup Construction, used some of the $3 million in Ponzi-scheme-like fashion to

18

pay down its own debt as well as to pay a referral commission to Westerfeld Construction. *Cf.* JA189, JA199–200.

Mobilization Funding and Westerfeld Construction will undoubtedly try to shield themselves from liability for their intentional misuse of Jessup Construction and GSH's joint-venture funds through broad, advance contractual releases of liability. *See* JA47 § 8(g), JA70–72 §§ 3.01–3.02, JA109–111 §§ 3.01–3.02, JA122–124 §§ 3.01–3.02, JA194–195, JA416–417 § 4. Among other claims, GSH and the Stokes challenge the validity and enforceability of these advance releases. *See* JA214–215.

## II.    Course of Proceedings and Disposition Below.

In June 2024, Plaintiff Mobilization Funding II, LLC filed suit in South Carolina state court, seeking to collect on the loan to Jessup Construction. JA22–146. In addition to Jessup (and the Setliffs), the Stokes and GSH were sued in their capacities as guarantors. The case was removed to federal district court under 28 U.S.C. §§ 1332 and 1441. JA17–19.

In July 2024, the Stokes and GSH answered the complaint and asserted counterclaims, cross-claims, and third-party claims, *see* JA9–10, and soon after, they filed an amended answer, which similarly asserts

counterclaims against Mobilization Funding, cross-claims against Jessup Construction and the Setliffs, and third-party claims against Westerfeld Construction, JA159–423. This answer and its exhibits are the Stokes and GSH's operative pleading. JA202–210, JA212–216.

Westerfeld Construction moved to dismiss the third-party claims against it under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. JA439–464 (motion, brief, and declaration of Mr. Bey). The Stokes and GSH opposed the motion. JA465–480. In reply, JA481–497, Westerfeld Construction filed a supplemental declaration of Mr. Bey, JA498–499. The Stokes and GSH moved to strike the supplemental declaration as belated and improper. JA500–522 (motion, response, and reply). The Stokes and GSH asked for jurisdictional discovery and oral argument. JA479, JA505, JA520. Because an evidentiary hearing would have been premature without jurisdictional discovery, no party sought, and the district court did not conduct, an evidentiary hearing on personal jurisdiction. *See* JA439–533.

On November 13, 2024, the district court entered an interlocutory opinion and order that dismissed the third-party claims against Westerfeld Construction for lack of personal jurisdiction over it in South

Carolina. JA52–533. The district court's order also implicitly denied the Stokes and GSH's alternative request for jurisdictional discovery. JA522–533; *see* JA479, JA505, JA520.

GSH and the Stokes filed an unopposed motion, requesting that the district court certify the order for immediate appeal under Federal Rule of Civil Procedure 54(b). JA534–561. On December 19, 2024, the district court certified its order of dismissal under Rule 54(b) for immediate appeal. JA562–565. This appeal timely followed. JA566–567.

## III. Rulings for Review.

Relying on the motion papers, the district court determined that the sole fact relevant to its analysis of personal jurisdiction was that Westerfeld Construction, a Florida company, was not expressly a party to the contracts governing the disbursement of project funds or selecting South Carolina as the forum for litigation. JA532–533. Concluding that the Stokes and GSH had otherwise offered "no evidence" to support a conclusion that Westerfeld Construction was subject to personal jurisdiction in South Carolina, the district court dismissed all third-party claims against it. JA533.

The district court held that it did not need to decide whether to strike the supplemental affidavit Westerfeld Construction newly filed in

21

reply (the district court did not consider it substantively), so it deemed that issue moot. JA533.

The district court also implicitly denied the Stokes and GSH's alternative request for jurisdictional discovery. JA522–533; *see* JA479, JA505, JA520.

## SUMMARY OF THE ARGUMENT

This Court should reverse the district court's order dismissing the third-part claims against Florida contractor Westerfeld Construction. GSH and the Stokes have raised allegations and facts sufficient to make a prima facie case that Westerfeld Construction is subject to specific personal jurisdiction in South Carolina.

First, the district court erred primarily by disregarding crucial facts and by failing to construe the facts in the light most favorable to establishing personal jurisdiction. When properly construed, the facts show that Westerfeld Construction purposefully availed itself of the privilege of doing business in South Carolina in multiple ways.

Westerfeld Construction had an undisclosed referral partnership with South Carolina lender Mobilization Funding. To make a profit, Westerfeld Construction conspired with Mobilization Funding to

22

fraudulently induce GSH and the Stokes to guarantee a contract-financed loan from Mobilization Funding. This transaction had its locus in South Carolina. Although the loan was secured by progress payments for a Florida construction project, the guarantees and loan documents require any dispute relating to the loan or guaranties to be litigated in South Carolina—Mobilization Funding's home—and under South Carolina law. Westerfeld Construction also substantially collaborated with Mobilization Funding to divert project-related funds for their own benefit, to the detriment of GSH and the Stokes.

Based on its conspiracy and collaboration with Mobilization Funding, Mobilization Funding's contacts with South Carolina must also be deemed to be contacts of Westerfeld Construction with South Carolina. Each of the Stokes and GSH's claims, which include intentional torts, arise from Westerfeld Construction's contacts with South Carolina.

Second, were the Court to entertain a belated supplemental affidavit from Westerfeld Construction's owner, the Court should disregard or strike it. In addition to being filed improperly in reply, the affidavit offers legal conclusions that have no evidentiary weight.

23

Third, in the alternative, because the Stokes and GSH have raised substantial facts concerning Westerfeld Construction's contacts with South Carolina, the Court should vacate the dismissal and remand for jurisdictional discovery.

## ARGUMENT

### I.    Standards of Appellate Review.

First, as Third-party Plaintiffs, the Stokes and GHS have the burden of establishing personal jurisdiction over Third-party Defendant Westerfeld Construction. *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). This Court reviews the district court's rulings on personal jurisdiction de novo. *Carefirst*, 334 F.3d at 396. Findings of fact are reviewed for clear error. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

"When …, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *accord Grayson*, 816 F.3d at 268; *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014); JA525– 526, JA533.

24

To decide whether a prima facie showing has been made, the Court "must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt*., 935 F.3d 211, 226 (4th Cir. 2019). "Unlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id*. Therefore, this Court must accept the facts submitted by the Stokes and GSH as true, even if they are disputed, and must interpret the facts "in the light most favorable to [them], assume [their] credibility, and draw the most favorable inferences for the existence of jurisdiction." *UMG Recordings*, 963 F.3d at 350; *see Carefirst*, 334 F.3d at 396.

Second, the question whether the district court erred by not striking an affidavit is typically reviewed for abuse of discretion. *See United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 312 (4th Cir. 2018). Here, however, the district court pretermitted as moot the question whether the belated, supplemental Bey affidavit should be stricken. JA533. This question is thus also reviewed de novo. *See Md. Chapter of*

25

*Am. Massage Therapy Ass'n, Inc. v. State of Md.*, 928 F.2d 399, at \*1 (4th

Cir. 1991) (table) (question whether issue is moot is reviewed de novo);

*cf. Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (mootness of action

reviewed de novo).

Third, denial of a request for jurisdictional discovery is reviewed for

abuse of discretion. *See Carefirst*, 334 F.3d at 396, 402.

## II.    The District Court Erred By Dismissing the Stokes and GSH's Third-party Claims Against Westerfeld Construction for Lack of Personal Jurisdiction.

The district court erred by holding that GSH and the Stokes did not

make a prima facie case for personal jurisdiction over Westerfeld

Construction. This Court should reverse.

### A.    *Standards for establishing a prima facie case for specific personal jurisdiction.*

A federal district court may exercise personal jurisdiction over a

foreign corporation only when doing so is both (1) authorized by the long-

arm statute of the state in which the court sits and (2) consistent with

the Fourteenth Amendment's due process clause. *dmarcian, Inc. v.*

*dmarcian Europe BV*, 60 F.4th 119, 131 (4th Cir. 2023); *Consulting*

*Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). "Federal

courts ordinarily follow state law in determining the bounds of their

jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (considering personal jurisdiction under state long-arm statute).

South Carolina's long-arm statute, S.C. Code Ann. § 36-2-803, however, is co-extensive with federal due process. *Grayson*, 816 F.3d at 270 (quoting *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012)); *FL Spring Hill Cortez LLC v. BC Waycross Spring Hill LLC*, 651 F. Supp. 3d 801, 806 (D.S.C. 2023). Thus, "'the first question collapses into the second,' because the South Carolina long-arm statute has been construed to extend jurisdiction 'to the outer limits' of due process." *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 657 n.2 (4th Cir. 1989) (citation omitted). In other words, the "two-prong test merges into the single question whether [the Stokes and GSH] ha[ve] made a prima facie showing that [Westerfeld Construction] had sufficient contacts with [South] Carolina to satisfy constitutional due process." *See Universal Leather*, 773 F.3d at 559; *see also* U.S. Const., amend. XIV; *Consulting Eng'rs*, 561 F.3d at 277; *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002).

27

To determine whether exercising specific personal jurisdiction is consistent with federal principles of due process, this Circuit applies the following three-prong test, considering:

> (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the [third-party] plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

*See dmarcian*, 60 F.4th at 133; *UMG Recordings*, 963 F.3d at 352.

The district court improperly discounted the Stokes and GSH's allegations that Westerfeld Construction conspired and collaborated with Mobilization Funding to divert project funds for their own benefit and to induce the Stokes and GSH to guarantee the loan. *See* JA 529–533. When the facts are construed in favor of the Stokes and GSH, as required, they establish a prima facie case for personal jurisdiction over Westerfeld Construction in South Carolina.

*B.    Westerfeld Construction purposefully availed itself of the privilege of doing business in South Carolina by conspiring and collaborating with Mobilization Funding.*

Contrary to the district court's ruling, this Court should hold that Westerfeld Construction purposefully availed itself of the privilege of doing business in South Carolina. *See dmarcian*, 60 F.4th at 133.

28

1. <u>To determine whether there has been purposeful availment, the Court considers non-exclusive factors</u>.

To decide whether a party has purposefully availed itself of the privilege of doing business in the forum state, this Court considers the following non-exclusive factors:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*dmarcian*, 60 F.4th at 133 (quoting *UMG Recordings*, 963 F.3d at 352).

For purposes of this appeal, it is undisputed that Westerfeld Construction, a Florida general contractor, has no South Carolina offices, does not own real property in South Carolina, has not registered to do business in South Carolina, and has no employees in South Carolina. *See* JA457–458. Jessup Construction and GSH are not South Carolina companies, and the Florida Rebuild Project is in Florida. *Supra*, 1–2, 9.

But this does not necessarily defeat personal jurisdiction. Evidence of "physical presence in the forum state is not essential." *Perdue Foods*

29

*LLC v. BRF S.A.*, 814 F.3d 185, 191 (4th Cir. 2016). There is personal jurisdiction when, as here, Westerfeld Construction conspired and collaborated with Mobilization Funding, a South Carolina company, to harm the Stokes and GSH in relation to contract-financing transactions whose locus is South Carolina.

> 2.  <u>Westerfeld Construction purposefully availed itself of the privilege of doing business in South Carolina by conspiring with Mobilization Funding</u>.

By conspiring with Mobilization Funding in inducing and performing South Carolina-focused transactions with Jessup Construction, GSH, and the Stokes, Westerfeld Construction purposefully availed itself of the privilege of doing business in South Carolina.

This Circuit has adopted a federal conspiracy theory of personal jurisdiction. *See Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013). "The Fourth Circuit has approved the exercise of long-arm jurisdiction pursuant to the conspiracy theory of personal jurisdiction." *Starr Consulting, Inc. v. Glob. Res. Corp.*, No. 1:06CV586, 2007 WL 9757852, at *7 (M.D.N.C. Feb. 21, 2007) (citing *McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir. 1983)). This Circuit "recognizes that the 'conspiracy theory of jurisdiction' can satisfy the first prong of the specific jurisdiction test," purposeful availment. *BeoCare Grp., Inc. v. Morrissey*,

124 F. Supp. 3d 696, 701–02 (W.D.N.C. 2015); *accord Doe v. Mast*, 741 F. Supp. 3d 409, 461, 463 n.51 (W.D. Va. 2024) (collecting cases); *Cline v. Hanby*, No. CIVA 2:05-0885, 2006 WL 3692647, at \*7 (S.D.W. Va. Dec. 13, 2006).

"To succeed on this theory, the [Stokes and GSH] would have to make a plausible claim (1) that a conspiracy existed; (2) that … defendants participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with [the forum state, here South Carolina] to subject that conspirator to jurisdiction" there. *See Unspam Techs.*, 716 F.3d at 329; *accord, e.g., Lolavar v. de Santibanes*, 430 F.3d 221, 230 (4th Cir. 2005); *McLaughlin*, 707 F.2d at 807. This requires pleading nonspeculative, specific facts showing a "common plan." *Unspam*, 716 F.3d at 330. This standard is met here.

The Stokes and GSH allege that Westerfeld Construction and Mobilization Funding engaged in a civil conspiracy relating to the contract-financing transactions with Mobilization Funding. JA213–214. Under the law of the forum state, South Carolina, a civil conspiracy entails: "(1) the combination or agreement of two or more persons, (2) to

31

commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Doe 9 v. Varsity Brands, LLC*, 679 F. Supp. 3d 464, 493 (D.S.C. 2023) (quoting *Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021)).

Westerfeld Construction and Mobilization Funding acted on their agreement, or "common plan," *see Unspam*, 716 F.3d at 329, to "lure the Stokes Parties into entering various agreements related to the guaranty of millions of dollars of construction loan debt to be loaned by [Mobilization Funding] to Jessup in association with the Florida Rebuild Project by promising that GSH would receive $3 million for its efforts." JA214. Unknown to the Stokes and GSH, Westerfeld Construction and Mobilization Funding had an ongoing "referral partner" relationship, by which Westerfeld Construction would profit monetarily whenever it induced a third person to enter into a contract-financing transaction with Mobilization Funding. JA185, JA189, JA196, JA201, JA207. In addition to enticing GSH and the Stokes to guarantee the contract-financed loan, Mobilization Funding and Westerfeld Construction also cooperated to use

32

project funds for their own benefit without paying down the loan. *Supra*, 15–19.

Construing the facts most favorably to the Stokes and GSH, as required, Mobilization Funding and Westerfeld Construction's referral partnership, solicitation of the contract financing, and agreement to divert funds involved "transacting … business in" South Carolina, "ent[ering] into a contract to be performed in whole or in part by either party" in South Carolina, reaching into South Carolina to solicit business, S.C. Code Ann. § 36-2-803(A)(1), (7), and deliberately engaging in significant business activity in South Carolina, *dmarcian*, 60 F.4th at 133. The Stokes and GSH's guaranties for the Florida Rebuild Project's contract financing—transactions whose contracts selected South Carolina as the forum for any litigation—related to and arose from this referral partnership. *See infra*, 45–46. The district court clearly erred by "ignor[ing] substantial evidence … in making its findings of fact." *See Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 384 (4th Cir. 1995).

Intentional overt acts by Westerfeld Construction included making numerous misrepresentations and diverting funds. *See supra*, 12, 15–19. An overt act is simply any "outward act, possibly innocent in itself, done

33

in furtherance of a conspiracy …." *Overt Act*, BLACK'S LAW DICTIONARY

(12th ed. 2024) As alleged in the third-party claims, Westerfeld Construc-

tion carried out its common plan with Mobilization Funding via the fol-

lowing conduct:

- Westerfeld Construction collaborated with Mobilization Funding to persuade the Stokes and GSH to partner with Jessup Construction on the Florida Rebuild Project and to guarantee the contract-financed loan. JA175–178. JA 185–186, JA188–189, JA214.

- Westerfeld Construction, through Mr. Bey, in cooperation with Mobilization Funding's CEO Mr. Peper, made false representations that induced the Stokes and GSH to guarantee the $5.8 million loan to Jessup Construction, GSH's joint-venturer. JA203–205. This included misrepresenting that:

  (1) proposed contract-financing loans for the Florida Rebuild Project could be repaid with two weeks;

  (2) Mobilization Funding itself owned capital sufficient to fund the loans itself;

  (3) Mobilization Funding and Westerfeld Construction would apply project payments to the loan balance and distribute profits to Jessup Construction and GSH;

  (4) Mobilization Funding would use payments from the State of Florida to directly pay subcontractors of Jessup Construction and GSH;

  (5) interest on any unpaid balance of the loan would be charged at the contractual rate; and

  (6) Westerfeld Construction would maintain proper accounting records. JA204–205; *see* JA59, JA193.

- Westerfeld Construction was a party to the wire-transfer agreement all parties entered into in connection with the contract-financing transaction. *See* JA419–420. And the subsequent funds-control agreement expressly authorized Westerfeld Construction to disburse funds "subject to approval by Mobilization [Funding]," through a Westerfeld Construction bank account. JA416.

- Westerfeld Construction collaborated with Mobilization Funding on project accounting and on ensuring that the Stokes and GSH remained uninformed about the disposition of project-related finances. JA176, JA191, JA195, JA198, JA201, JA206, JA214.

- Westerfeld Construction handled funds for the Florida Rebuild Project, receiving payments from the owner and making disbursements for the benefit of Mobilization Funding and itself. JA198, JA213, JA416–420; *supra*, 15–19.

- Westerfeld Construction and Mobilization Funding intentionally took advantage of, and financially harmed, the Stokes and GSH by diverting funds for their own use. JA175–176, JA189, JA198–207, JA209, JA214.

An unavoidable, reasonable inference is that, in so cooperating, Westerfeld Construction communicated frequently with Mobilization Funding. This necessarily involved "conceptually 'enter[ing]' the State [of South Carolina] … for jurisdictional purposes." *See dmarcian*, 60 F.4th at 134 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002)).

35

Due to this conspiracy, the Stokes and GSH seek to hold Westerfeld Construction and Mobilization Funding jointly liable for several causes of action: negligence, JA202; fraudulent misrepresentation and inducement, JA202–205, JA214; fraudulent concealment, JA205–207; breach of contract, JA207–208; deceptive trade practices, JA208–209; intentional interference with contractual relationships, JA209; breach of fiduciary duty, JA 209–210; and conversion, JA202–213; *see Wildcat Retro Brands LLC v. NWL Distrib. LLC*, No. 8:20-CV-04207-DCC, 2021 WL 2914990, at *2 (D.S.C. July 12, 2021) (joint liability). The Stokes and GSH also seek a declaratory judgment invalidating the guaranties as "void ab initio based on the unconscionable, unlawful and fundamentally unfair" nature of the contracts. JA214–215.[2]

Westerfeld Construction's conspiracy with Mobilization Funding thus entailed "commi[tting] … a tortious act in whole or in part" in South Carolina. S.C. Code Ann. § 36-2-803(A)(3); *see dmarcian*, 60 F.4th at 133.

---

[2] The question whether these causes of action, which underlie the conspiracy, are themselves substantively viable is not before the Court. JA439–453. "Generally, a court must resolve jurisdictional issues before considering the merits of a claim," without conflating the two separate analyses. *See Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022); *accord Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035 (7th Cir. 2000); *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 267, 270 (D.S.C. 1999).

It makes no difference that Mr. Bey's affidavit says Westerfeld Construction "does not otherwise transact business" in South Carolina and has not "engaged in significant or long-term business activities" there. JA458. These statements are merely conclusory. And to the extent they contradict the Stokes and GSH's allegations recounted above, they must be disregarded. *See Carefirst*, 334 F.3d at 396.

As a result of the conspiracy, for jurisdictional purposes *Mobilization Funding's* relevant contacts with South Carolina *also* constitute *Westerfeld Construction's* contacts with South Carolina. This is because, under this Circuit's conspiracy theory of personal jurisdiction,

> when individuals conspire to do something that they could reasonably expect to have consequences in a particular forum, if one coconspirator who is subject to personal jurisdiction in the forum commits overt acts in furtherance of the conspiracy, *those acts are attributable to the other co-conspirators*, who thus become subject to personal jurisdiction even if they have no other contacts with the forum.

*Cline*, 2006 WL 3692647, at *7 (emphasis added).

South Carolina also recognizes a conspiracy theory of personal jurisdiction, which supports reaching the same conclusion, for the same reasons. "In certain instances," as here, "an out-of-state defendant may be subject to jurisdiction under a long-arm statute on the theory that his co-conspirator conducted activities in a particular state pursuant to the

37

conspiracy." *Hammond v. Butler, Means, Evins & Brown*, 388 S.E.2d 796, 798 (S.C. 1990); *accord Springs Indus., Inc. v. Gasson*, 923 F. Supp. 823, 828 (D.S.C. 1996). Westerfeld Construction colluded with Mobilization Funding to intentionally injure the Stokes and GSH, causing them to suffer special damages, including $400,000 in unpaid expenses and alleged liability for over $7.4 million in contract financing. *See Hammond*, 388 S.E.2d at 798 (exercising personal jurisdiction based on conspiracy).

The district court's rulings to the contrary are erroneous. Although it acknowledged that the Stokes and GSH raised a conspiracy theory of personal jurisdiction, JA530, it held that Westerfeld Construction had not purposefully availed itself of doing business in South Carolina solely on the ground that it was "not a signatory to the Funds Control Agreement." JA532. In effect, the district court collapsed the entirety of Westerfeld Construction's collaboration with Mobilization Funding—its myriad fraudulent inducements, diversions of funds, and concealments— into asking whether Westerfeld Construction was a *party* to the loan documents and the funds-control agreement. JA528–529, JA531–533.

In doing this, the district court made an error of law, and clearly erred in its factfinding, by viewing the relevant facts far too narrowly, without construing them in favor of the Stokes and GSH. *See Carefirst*, 334 F.3d at 396 (for a prima facie case, court must construe facts in favor of personal jurisdiction); *Mylan*, 2 F.3d at 60; *cf. Williams v. Martorello,* 59 F.4th 68, 86 (4th Cir. 2023) (a finding may be clearly erroneous even when there is evidence to support it if a review of all evidence creates a firm conviction that a mistake was made). The district court improperly minimized the conspiracy-related facts. And the district court incorrectly suggested that "GSH offer[ed] no evidence" to support Westerfeld Construction's shared responsibility for Mobilization Funding's misconduct. JA533.

Construing the record evidence in the light most favorable to the Stokes and GSH—which the district court should have done but did not do—this Court should hold they have made a prima facie case that Westerfeld Construction purposefully availed itself of the privilege of doing business in South Carolina. *See Hawkins*, 935 F.3d at 226.

3. <u>Westerfeld Construction purposefully availed itself of the privilege of doing business in South Carolina by inducing GSH and the Stokes to agree to South Carolina forum-selection provisions</u>.

First, Westerfeld Construction's collusion with Mobilization Funding further constitutes doing business in South Carolina because the contract-financing transactions have their "locus" there. *See Universal Leather*, 773 F.3d at 560. The loan documents, including the Stokes and GSH's guaranties—which Westerfeld Construction helped procure for Mobilization Funding—contain forum-selection and choice-of-law provisions that select South Carolina as the forum for any related litigation and select South Carolina law as governing. *See* JA24–25, JA46 § 8(d)–(e), JA56 § 11, JA63–64 § 15(c)–(d), JA77–78 § 6.08(a)–(b), JA116 § 6.08(a)–(b), JA129 § 6.08(a)–(b).

To advance its conspiracy with Mobilization Funding, Westerfeld Construction caused the Stokes and GSH to agree to litigate any related dispute under South Carolina law and in South Carolina, where Mobilization Funding does business. Westerfeld Construction then acted in concert with Mobilization Funding to commit intentional torts against the Stokes and GSH. *See Unspam*, 716 F.3d at 329; *supra*, 36 (alleged torts). The Stokes and GSH feel the "effects" of this intentional conduct

40

in South Carolina because Westerfeld Construction induced them to agree to litigate under South Carolina law and in South Carolina—the "focal point" of the contract-financing transactions, and Mobilization Funding's home forum. *Consulting Eng'rs*, 561 F.3d at 280–81 (discussing "effects test"); *see also Sunny Days Ent., LLC v. Traxxas, L.P.*, 376 F. Supp. 3d 654, 662 (D.S.C. 2019).

Second, insofar as Westerfeld Construction wishes to rely on a broad, advance release of liability in its favor in the funds-control agreement, it is bound to litigate in South Carolina as a third-party beneficiary of the contracts containing the forum-selection provisions. The funds-control agreement expressly and broadly releases both "*Westerfeld* and Mobilization" from liability. JA416 § 4 (emphasis added). Because Westerfeld Construction is not expressly a party to the funds-control agreement, JA416–417, to have standing to invoke this release, it must show it is a third-party beneficiary of that agreement.[3]

---

[3] The loan documents Westerfeld Construction helped procure also contain releases of liability against Mobilization Funding (which the Stokes and GSH contend, along with the funds-control agreement's release, are invalid as unconscionable). JA47 § 8(g), JA70–72 §§ 3.01–3.02; JA109–111 §§ 3.01–3.02, JA122–124 §§ 3.01–3.02, JA194–195.

"Generally, a third person not in privity of contract with the contracting parties does not have a right to enforce the contract." *Hardaway Concrete Co., Inc. v. Hall Contracting Corp*., 647 S.E.2d 488, 492 (S.C. Ct. App. 2007). Westerfeld Construction may enforce the release only "if the contracting parties intended to create a direct ... benefit to" it. *See Fabian v. Lindsay*, 765 S.E.2d 132, 139 (S.C. 2014). Although the loan agreement disclaims third-party beneficiaries, *see, e.g*., JA48 § 8(q), the guaranties and other contracts at issue—including the funds-control agreement—do not. *See, e.g*., JA416–417.

But if Westerfeld Construction wishes to benefit from the release as its intended third-party beneficiary, it may not avoid also being bound by the forum-selection provisions in the related contracts. When "a third party elects to avail herself of a contract entered into between others for her benefit, she makes the contract her own, and must bear the burden as well as reap the benefits that properly belong to her as a party to the contract." *Kingman v. Nationwide Mut. Ins. Co*., 134 S.E.2d 217, 221 (S.C. 1964); *accord Bennett v. ACS Primary Care Physicians-Se. P.C*., 908 S.E.2d 110, 116 n.5 (S.C. Ct. App. 2024).

42

The funds-control agreement that purports to release Westerfeld from liability also provides that compliance with its terms is "a material term of the *documents governing the Loan* …." JA417 § 6 (emphasis added). In other words, the funds-control agreement is rolled into the contract-financing loan documents, including the guaranties executed by the Stokes and GSH. The funds-control agreement therefore must be construed together with those loan documents. "[T]wo contracts executed at different times relating to the same subject matter, entered into by the same parties, are to be construed as one contract and considered as a whole." *Portrait Homes - S.C., LLC v. Pa. Nat'l Mut. Cas. Ins. Co*., 900 S.E.2d 245, 281 (S.C. Ct. App. 2023).

The loan documents, in turn, expansively select South Carolina as the forum for *any* dispute "arising out of or relating to" them. JA46 § 8(e); *see also, e.g.,* JA64 § 15(d) ("any and all disputes arising out of or related to … the Loan Documents"); *supra*, 15. It follows that, if Westerfeld Construction wishes to accept the benefit of the funds-control agreement's release of liability, it must also accept the agreement's burdens, including the requirement to litigate in South Carolina. This is

43

yet another significant contact by Westerfeld Construction with South Carolina. *See dmarcian*, 60 F.4th at 133.

4. <u>Westerfeld Construction is subject to specific personal jurisdiction in South Carolina because it substantially collaborated with Mobilization Funding</u>.

Additionally, and alternatively, the Court should conclude that the same facts addressed above support holding that Westerfeld Construction substantially collaborated with Mobilization Funding.

This Court has generally "concluded that a foreign defendant has purposefully availed itself of the privilege of conducting business in the forum state when the defendant 'substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute.'" *Universal Leather*, 773 F.3d at 560 (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 302 (4th Cir. 2012)). Although the construction project was in Florida, the "locus" of the *contract-financing transactions* is South Carolina. *See id*. By inducing the Stokes and GSH into guaranteeing South Carolina-focused contract financing, Westerfeld Construction substantially collaborated with Mobilization Funding to commit actionable wrongdoing aimed at South Carolina. And the guaranties are the basis of this dispute.

In sum, the facts show that Westerfeld Construction reached into South Carolina to solicit contract-financing business with Mobilization Funding, deliberately engaged as a referral partner in South Carolina, and induced parties to enter into interrelated contracts—by which Westerfeld Construction itself benefits—that select South Carolina laws and a South Carolina forum. *See dmarcian*, 60 F.4th at 133 (purposeful-availment factors). The Court should hold that the Stokes and GSH have made a prima facie case that Westerfeld Construction purposefully availed itself of the privilege of doing business in South Carolina in relation to the contract financing. *See Unspam*, 716 F.3d at 328.

C.    *The Stokes and GSH's third-party claims arise out of Westerfeld's activities directed at South Carolina.*

Upon concluding that the Stokes and GSH have passed the purposeful-availment step, the Court must next consider whether their third-party claims "arose out of activities directed" at the forum state. *See dmarcian*, 60 F.4th at 134. The Stokes and GSH must show that their causes of action "arise out of" Westerfeld Construction's conduct that was purposefully directed at South Carolina. *See UMG Recordings*, 963 F.3d at 351.

45

Westerfeld Construction conspired with Mobilization Funding to fraudulently induce the Stokes and GSH to guarantee the contract-financing loan. The loan documents are governed by South Carolina law and require any related dispute to be litigated in South Carolina, the home of lender Mobilization Funding. *Supra*, 15. As a referral partner that stood to benefit financially from Mobilization Funding's loan to third persons, Westerfeld Construction directly involved itself in procuring the contract-financing transactions. *Supra*, 8. In connection with those transactions, Westerfeld Construction colluded with Mobilization Funding to unlawfully divert project-related funds. *Supra*, 15–19. And to the extent that Westerfeld Construction may try to insulate itself from liability for such misconduct based on the funds-control agreement's release, it cannot evade the South Carolina forum-selection provisions in the related contracts. *Supra*, 15.

The Stokes and GSH's third-party claims against Westerfeld Construction—negligence, fraudulent misrepresentation and inducement, concealment, deceptive trade practices, breach of fiduciary duty, and conversion—all arise directly from this conduct by Westerfeld Construction, which was aimed at South Carolina.

46

> D.    It is constitutionally reasonable for the District of South
> Carolina to exercise personal jurisdiction over Westerfeld
> Constriction in this case.

Were the Court to conclude that the Stokes and GSH have passed

the first two steps of the jurisdictional analysis, *see dmarcian*, 60 F.4th

at 133, as it should, the burden would shift to Westerfeld Construction to

show that exercising personal jurisdiction over it in South Carolina

would be constitutionally unreasonable. "[W]here a defendant who

purposefully has directed his activities at forum residents seeks to defeat

jurisdiction, he must present a compelling case that the presence of some

other considerations would render jurisdiction unreasonable." *Burger

King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Relevant factors for

this inquiry include:

> (1) the burden on the defendant of litigating in the forum;
> (2) the interest of the forum state in adjudicating the dispute;
> (3) the plaintiff's interest in obtaining convenient and
> effective relief; (4) the shared interest of the states in
> obtaining efficient resolution of disputes; and (5) the interests
> of the states in furthering substantive social policies.

*Consulting Eng'rs*, 561 F.3d at 279.

First, the record contains no evidence that litigating the

third-party claims in South Carolina would burden Westerfeld

47

Construction at all, much less burden it unduly. *See* JA439–464, JA481–499; *Consulting Eng'rs*, 561 F.3d at 279.

Second, South Carolina has an interest in adjudicating the third-party claims because they relate to and arise from a dispute filed by Mobilization Funding over contract-financing transactions that have their locus in South Carolina and that, by contract, are governed by South Carolina law. *See supra*, 15; *Consulting Eng'rs*, 561 F.3d at 279. States have a legitimate interest in applying and enforcing their own laws. *Cf. Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191 (2022).

Third, as third-party plaintiffs, the Stokes and GSH have an interest in litigating their claims against Westerfeld Construction in the same case in which the contract-financing transactions are being litigated. *See Consulting Eng'rs*, 561 F.3d at 279. To permit separate litigation in different courts would be inefficient and would risk inconsistent rulings on identical issues. Combining the actions would serve judicial economy.

Considering the factors, this Court should thus conclude that it is constitutionally reasonable to find that South Carolina can and should

48

exercise personal jurisdiction over Westerfeld Construction in this matter.

## III. The Court Should Disregard or Strike the Affidavit Belatedly Filed by Westerfeld Construction.

With its reply brief in support of its motion to dismiss, Westerfeld Construction submitted a supplemental affidavit from Mr. Bey. JA498–499. The Stokes and GSH moved to strike it because it injected new testimony belatedly and exceeded the scope of Westerfeld Construction's initial brief. JA501–505.

The district court pretermitted this issue as moot. JA523–524, JA533. Although the district court's order notes that the supplemental affidavit was filed, JA524, it does not rely on it. JA522–533. Were this Court to consider reversing or vacating the district court's dismissal for lack of personal jurisdiction, however, the question whether Mr. Bey's supplemental affidavit should be considered would no longer be moot. In such event, the Court should hold as follows.

First, even if the Court were to consider the supplemental Bey affidavit, JA498–499, it should hold that its substance is irrelevant to the jurisdictional analysis. Mr. Bey asserts that Westerfeld Construction has not contractually consented to personal jurisdiction in South Carolina.

JA499. This is not really a factual assertion but rather a legal conclusion about the meaning of contracts already before the Court. *Cf. Wachovia Bank, N.A. v. Fed. Rsrv. Bank of Richmond*, 338 F.3d 318, 323 n.5 (4th Cir. 2003) (noting that legal conclusions in an affidavit are entitled to no weight). The Court must draw its own conclusions concerning the extent to which the funds-control agreement and other contracts affect personal jurisdiction. Were the Court to agree that the supplemental Bey affidavit provides nothing more than legal conclusions, it should either strike it as irrelevant or simply disregard it.

Second, alternatively, because the district court dismissed the third-party claims against Westerfeld Construction without holding an evidentiary hearing, the Court may not consider the supplemental Bey affidavit, JA498–499—or for that matter the original one, JA456–458—to the extent either contradicts the facts alleged by the Stokes and GSH. This is because "the court must take all disputed facts and reasonable inferences in favor of the [the Stokes and GSH]," *Carefirst*, 334 F.3d at 396, and "draw the most favorable inferences for the existence of jurisdiction," *UMG Recordings*, 963 F.3d at 350. The result is that,

insofar as either Bey affidavit presents facts that contradict those alleged by the Stokes and GSH, the Court must disregard it.

Third, in the further alternative, were the Court to view the supplemental Bey affidavit as containing competent factual allegations that add to, without disputing, facts alleged by the Stokes and GSH, then the Court should strike it as unfairly raising new matters for the first time in reply. *See Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 268 (D. Md. 2023); *cf. Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995).

Finally, in any event, the Court should find that neither Bey affidavit detracts from the prima facie case for exercising personal jurisdiction over Westerfeld Construction.

## IV. Alternatively, the Court Should Vacate the Dismissal and Remand for Jurisdictional Discovery.

The Stokes and GSH alternatively requested leave to engage in jurisdictional discovery concerning Westerfeld Construction's contacts with South Carolina. *See* JA479, JA505, JA520. Whether to permit jurisdictional discovery is up to the district court's discretion. *See Carefirst*, 334 F.3d at 396, 402. "The district court's judgment implicitly denied [the Stokes and GSH's] request for [jurisdictional discovery] by failing to address the matter" and entering an order inconsistent with

51

granting such relief. *See Voliva v. Seafarers Pension Plan*, 858 F.2d 195, 197 (4th Cir. 1988); JA522–533; *see also, e.g., Fowler v. Lee*, 18 F. App'x 164, 165 (4th Cir. 2001).

The Stokes and GSH's third-party claims raise substantial factual questions concerning Westerfeld Construction's contacts with South Carolina in relation to its referral partnership with Mobilization Funding, their inducement of Jessup Construction, the Stokes, and GSH to enter into or guarantee the contract-financed loan, and Westerfeld Construction's collusion with Mobilization Funding to divert payments for the subcontractors' work on the Florida Rebuild Project. *Supra*, 15–19. The district court erroneously failed to construe such alleged facts in favor of the Stokes and GSH, effectively disregarding them. *See Carefirst*, 334 F.3d at 396; *Williams*, 59 F.4th at 86 ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."); *Jiminez*, 57 F.3d at 384. Further, the district court should reasonably have inferred that Westerfeld Construction had significant communications and other dealings with Mobilization Funding in relation to the contract-financing transactions. *See supra*, 10.

"An abuse of discretion occurs [when] a decision is guided by erroneous legal principles ... or rests upon a clearly erroneous factual finding." *In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 250 (4th Cir. 2023) (citation omitted, alteration original). Because the district court failed to construe the facts in favor of the Stokes and GSH, it erred as a matter of law and adopted a clearly erroneous view of the facts. The district court thus abused its discretion by dismissing the third-party claims without permitting jurisdictional discovery. *See Ancient Coin Collectors*, 899 F.3d at 312.

As is apparent from the record, the Stokes and GSH have reason to believe that jurisdictional discovery would reveal ample contacts by Westerfeld Construction with South Carolina, including in relation to its referral partnership with Mobilization Funding. In the alternative to reversing, the Court should vacate the dismissal and remand for jurisdictional discovery and related proceedings. *See, e.g., Barton v. Sindall Transp., Inc.*, 934 F.2d 318, \*3 (4th Cir. 1991) (table).

## CONCLUSION

The Court should reverse the dismissal of the Stokes and GSH's third-party claims against Defendant Westerfeld Construction. The

53

Court should strike or disregard Westerfeld Construction's belated supplemental affidavit on personal jurisdiction. Alternatively, the Court should vacate the dismissal and remand for jurisdictional discovery.

REQUEST FOR ORAL ARGUMENT

Appellants the Stokes and GSH respectfully request oral argument. This appeal addresses, among other issues, the application of this Circuit's conspiracy theory of jurisdiction and the extent to which inducing a party to enter into a forum-selection clause with a third party can support personal jurisdiction over the inducing party. Oral argument would significantly aid the decisional process.

Respectfully submitted,

*s/ Joseph Paul Schilleci, Jr.*

Joseph Paul Schilleci, Jr.
SCHILLECI & TORTORICI, P.C.
100 Centerview Drive, Ste. 205
Birmingham, AL 35216
(205) 978-4211
jps@schillecilaw.com

*s/ Robert F. Parsley*

Robert F. Parsley
MILLER & MARTIN PLLC
832 Georgia Ave., Suite 1200
Chattanooga, TN 37402
(423) 756-6600

54

bob.parsley@millermartin.com

*Counsel for Appellants Barbara
Stokes, Scott Stokes, and GSH of
Alabama, LLC*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. _25-1050_     **Caption:** _Mobilization Funding, LLC, v. Barbara Stokes, et al._

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

> **Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

> **Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

> **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains ____10,146____ [*state number of*] words

☐ this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☐ this brief or other document has been prepared in a proportionally spaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*];

**or**

☐ this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Robert F. Parsley

Party Name _GSH of Alabama, LLC, Barbara Stokes, and Scott Stokes_     Date: _April 10, 2025_

56

12/09/2024 NA/MEO